UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

                Plaintiff,        Case No. 24-20563

v.                                  Judith E. Levy
                                   United States District Judge

Carnord Craig Gordon,

                                   Mag. Judge David R. Grand

                Defendant.

_____/

**OPINION AND ORDER DENYING MOTION TO DISMISS COUNT ONE OF THE INDICTMENT PURSUANT TO THE SECOND AMENDMENT [17]**

Before the Court is Defendant Carnord Craig Gordon's motion to dismiss Count One of the indictment. (ECF No. 17.) For the reasons set forth below, Defendant's motion is denied.

**I.    Background**

A one-count indictment filed on October 3, 2024 charges Defendant with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).[1] (ECF No. 13.) The indictment alleges that

---

[1] 18 U.S.C. § 922(g)(1) states:

> [o]n or about September 5, 2024, in the Eastern District of Michigan, Southern Division, the defendant, Carnord Craig Gordon, knowing that he had been convicted of a crime punishable by imprisonment for a term exceeding one year, knowingly possessed, in and affecting interstate and foreign commerce, a firearm, that is, one Glock, model: 26 Generation 5, 9x19mm caliber pistol, in violation of Title 18, United States Code, Section 922(g)(1).

(ECF No. 13, PageID.21.) Defendant pled not guilty on October 7, 2024.

Defendant filed the motion to dismiss on October 28, 2024. (ECF No. 17.) In his motion, Defendant brings a facial and an as-applied constitutional challenge to his prosecution under § 922(g)(1). (*Id.* at PageID.30–31, 37–38.) Specifically, Defendant states that, pursuant to the "dangerousness" standard set forth in *United States v. Williams*, 113 F.4th 637 (6th Cir. 2024), he is "not a 'dangerous' person at this point in his life" and, as such, § 922(g)(1)'s application to him is unconstitutional under the Second Amendment. (*Id.* at PageID.37.) He also argues that *Williams* "creates due process problems" because "§ 922(g)(1) is

---

It shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

2

overbroad and thus facially unconstitutional" and the "*Williams*'[] 'dangerous person' test is void for vagueness." (*Id.* at PageID.38–39.)

## II. Legal Standard

Pursuant to Federal Rule of Criminal Procedure 12(b), "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Such a defense, objection, or request may include "a motion alleging a defect in instituting the prosecution" or "a defect in the indictment or information." Fed. R. Crim. P. 12(b)(A)–(B); (ECF No. 17, PageID.33.)

## III. Analysis

### A. The *Williams* Decision

On August 23, 2024, the Sixth Circuit issued *Williams*, holding that "§ 922(g)(1) is constitutional on its face and as applied to dangerous people." *Williams*, 113 F.4th at 662–63. As such, defendants may bring an as-applied Second Amendment challenge to their prosecution pursuant to § 922(g)(1) by demonstrating that they are not dangerous. It is the defendant's burden to demonstrate that he is not dangerous. *Id.* at 657.

3

In order to determine whether a defendant is dangerous, district courts "must focus on each individual's specific characteristics," including "the individual's entire criminal record." *Id.* at 657–58. "Courts may consider any evidence of past convictions in the record, as well as other judicially noticeable information–such as prior convictions–when assessing a defendant's dangerousness." *Id.* at 660.

*Williams* provides guidance related to past convictions, and how such convictions should inform the district court's analysis. First, "crimes against the person," which are "dangerous and violent crimes like murder, rape, assault, and robbery," are "at least strong evidence that an individual is dangerous." *Id.* at 658. A defendant who has committed such a crime faces an "extremely heavy" burden to show that he is not dangerous. *Id.*

*Williams* describes a second category of crimes: crimes which "pose a significant threat of danger" and "put someone's safety at risk." *Id.* at 659. These crimes, such as drug trafficking and burglary, "do not always involve an immediate and direct threat of violence against a particular person," but may "pose a danger to the community" or "create[] the possibility of a violent confrontation." *Id.* A defendant who has committed

4

such a crime "will have a very difficult time . . . of showing he is not dangerous." *Id.* at 663. Similarly, "a pattern of conduct risking or causing physical harm strengthens the inference that a defendant is dangerous enough to be prosecuted under § 922(g)(1)." *United States v. Golden*, No. 3:23-CR-94, 2025 WL 268364, at *2 (N.D. Ohio Jan. 22, 2025) (citing *United States v. Goins*, 118 F.4th 794, 804 (6th Cir. 2024); *United States v. Parham*, 119 F.4th 488, 495 (6th Cir. 2024)).

The third category of crimes includes those that "pose no threat of physical danger, like mail fraud, tax fraud, or making false statements." *Williams*, 113 F.4th at 663. A conviction for these crimes is unlikely to produce a finding that the defendant is dangerous. *Id.* at 659.

### B. Evidence Before the Court

The Court must first decide what information it will consider when determining if Defendant is "dangerous" such that his prosecution pursuant to § 922(g)(1) is constitutional under the Second Amendment.

Generally, courts may consider "judicially noticeable information" when making a dangerousness analysis. *Williams*, 113 F.4th at 660. This includes prior convictions and the underlying facts of those convictions. *Id.* at 660, 662 (stating that "a court can accept prior convictions without

5

an evidentiary hearing or jury fact finding"); *Goins*, 118 F.4th at 804–05; *Parham*, 119 F.4th at 496 (considering the underlying facts of the defendant's prior offense, which "involved shooting a young child"); *United States v. Morton*, 123 F.4th 492, 500 (6th Cir. 2024) (discussing the district court's use of state-court judgments). Courts may also consider presentence reports. *Williams*, 113 F.4th at 660, 662 (approving the consideration of details in the defendant's federal Presentence Report, the contents of which the defendant did not object to); *but see United States v. Johnson*, No. 2:23-CR-20569, 2025 WL 226957, at *3 (E.D. Mich. Jan. 16, 2025) (declining to consider state presentence reports and determining they contain non judicially noticeable information).[2]

---

[2] The government urges the Court to consider other acts beyond Defendant's conviction and admitted supervised release violations. Specifically, the government provides information regarding (1) the underlying facts of the instant offense (ECF No. 20, PageID.48–49; *see also* ECF No. 23, PageID.103–104), (2) text messages, social media posts, and the investigation related to his 2020 conviction (ECF No. 20, PageID.49–55), (3) the underlying facts of the Court's December 27, 2019 order cancelling Defendant's bond and January 28, 2020 order of detention pending trial for his 2020 felony conviction (ECF No. 20, PageID.56; *see also* Case No. 19-20610, ECF Nos. 25, 33), (4) infractions incurred during his term of imprisonment in the Bureau of Prisons (ECF No. 20, PageID.57; ECF No. 20-3 (inmate discipline data), (5) other criminal history, including a 2015 misdemeanor and arrests incurred between 2012 and 2019 (ECF No. 20, PageID.59; *see also* ECF No. 20-2, PageID.82–83), and (6) his current detention status. (ECF No. 20, PageID.60.)

Defendant has a prior felony conviction. On March 10, 2020, Defendant pled guilty in this Court to receipt or possession of an unregistered firearm, in violation of 26 U.S.C. §§ 5861(d) and 5871. (ECF No. 20-2, PageID.76; *see also United States of America v. Carnord Gordon*, Case No. 19-20610, ECF No. 37 (E.D. Mich.) (signed plea agreement).) Defendant describes his conduct as follows: "Defendant's offense conduct involved his online purchase of 5 Glock conversion switches, at $19.99 apiece, from CBTFORE.com which advertised the devices and was a company in China." (ECF No. 17, PageID.37.) Defendant was sentenced to 41 months of custody and a three-year term of supervised release. (Case No. 19-20610, ECF No. 41, PageID.179–180.)

---

The Court will not consider this information because it is not necessary for the Court's decision. Further, some of this information does not appear to be judicially noticeable or hold weight in the "dangerousness" analysis. As to the underlying facts of the instant offense, the government cites *United States v. Fordham*, No. 24-1491, 2025 WL 318229, at *5 (6th Cir. Jan. 28, 2025), which considered the underlying facts of the offense in determining that the defendant is "dangerous." However, the Court notes that the defendant in *Fordham* pled guilty, a presentence report was prepared, the district court heard objections to the presentence report, and the defendant's objections were rejected. *Id.* at *3. Here, the Court's only source of information on the underlying facts of the instant offense is the criminal complaint. (ECF No. 1.) As such, the Court is not convinced that consideration of the instant offense would be appropriate at this time.

Additionally, on September 6, 2023, Defendant admitted guilt to violating five conditions of his supervision, including the condition that he will not commit another federal, state, or local crime. (Case No. 19-20610, ECF No. 64, PageID.270.) He was sentenced to five months in custody. (*Id.*)

The violation report describes his violation of supervised release as follows:

> On July 20, 2023, Romulus (Michigan) Police Department was dispatched in reference to a domestic assault. Investigation revealed GORDON had assaulted his girlfriend at her apartment. It was reported GORDON and his girlfriend had a verbal altercation inside the apartment. According to GORDON'S girlfriend, she attempted to separate herself from GORDON by going into another room, which GORDON continuously attempted to get into by kicking and pushing the door open, resulting in damage to the door. GORDON walked past his girlfriend and open handed pushed her on her neck, causing her to fall to the ground. As she attempted to get up, GORDON pushed her one more time against her neck. GORDON'S girlfriend was able to get up, gather her children and left to a location of safety where she called the police. Upon arrival by law enforcement, GORDON was no longer at the residence, however, his vehicle was located at the apartment . . . .
>
> On July 22, 2023, Romulus (Michigan) Police was dispatched back to GORDON'S girlfriend's residence for a civil matter call. GORDON came to his girlfriend's apartment at 1:30am, walked inside the residence, after his girlfriend put his belongings outside the day prior. GORDON appeared upset because he was notified

8

that she had spoken to this writer. GORDON attempted to place his items back into the apartment and shut the front door. GORDON'S girlfriend called the police and she attempted to exit the apartment; however, GORDON blocked her from exiting. GORDON[']S girlfriend then went to the back exit of the apartment, but GORDON stood in front of it and would not allow her to leave. GORDON grabbed her while blocking the door, as if he were giving her a bear hug. GORDON'S girlfriend attempted to go back to the front exit, but GORDON again stood in front of it and would grab her arms and push them away to keep her from leaving. At this time, officers were on scene and could hear GORDON'S girlfriend asking GORDON to let her leave, and him refusing. Officers knocked on the front door, which GORDON then allowed his girlfriend to answer. GORDON was placed under arrest and charged with Assault Battery/Simple. GORDON was transferred to the Romulus Police Department, where he was lodged. GORDON was released on July 23, 2023.

(Case No. 19-20610, ECF No. 54, PageID.253.) According to the government, "no charge was ultimately filed [for this conduct] because the victim declined prosecution." (ECF No. 20, PageID.58.)

Finally, Defendant acknowledges "that he was on supervised release with a condition prohibiting firearm/weapon possession at the time of the instant offense." (ECF No. 17, PageID.37.)

### C. Applying *Williams*

Defendant has not met his burden to demonstrate that he is not "dangerous" as defined by *Williams*, 113 F.4th 637.

Defendant's conviction for receipt or possession of an unregistered firearm, 26 U.S.C. §§ 5861(d) and 5871, falls within the second category of *Williams*' offenses: a crime that "pose[s] a significant threat of danger" and "put someone's safety at risk." *Williams*, 113 F.4th at 659. District courts have held that felonies involving unlawful firearm possession belong in this category. *See United States v. Jones*, No. 24-20427, 2025 WL 48072, at *3 (E.D. Mich. Jan. 8, 2025) ("[T]he court in Williams indicated support for including a conviction for possessing a firearm as a felon in the second category."); *United States v. Flores*, No. 24-20579, 2025 WL 348390, at *2 (E.D. Mich. Jan. 30, 2025) (holding that conviction for carrying a concealed weapon falls within the second category because "[t]he presence of unregistered deadly weapons . . . presents the potential for significant danger"). The Sixth Circuit explained that "most" crimes in this category "put someone's safety at risk, and thus, justify a finding of danger." *Williams*, 113 F.4th at 659; *see also id.* at 662 (stating that "[t]he government could've pointed to any one of those convictions," including the defendant's felon in possession of a firearm conviction, "to demonstrate his dangerousness").

Defendant avers that "his federal offense was not for a 'dangerous' crime" and "the facts surrounding Defendant's prior federal conviction doe[s] not establish him as 'dangerous.'" (ECF No. 17, PageID.37.) However, this conviction involves unlawful possession of a firearm and, as such, is indicative of "dangerousness" according to *Williams*. Additionally, Defendant's admitted supervised release violation in July 2023 involved very violent conduct. (Case No. 19-20610, ECF No. 54, PageID.253 (describing Defendant's conduct, including kicking and pushing a door open, pushing his girlfriend on the neck two times, and blocking her from leaving an apartment).)

Crucially, Defendant was on supervised release when he committed this offense. This alone is sufficient support for Defendant's disarmament. The Sixth Circuit in *Goins* held that felons on supervised release, probation or parole may be deprived of their right to possess a firearm. *See Goins*, 118 F.4th at 801–03 ("[O]ur nation's historical tradition of forfeiture laws, which temporarily disarmed convicts while they completed their sentences, also supports disarming those on parole, probation, or supervised release.").

11

Defendant argues that he does not have a "criminal history of 'repeated actions' which show a likelihood of future dangerous conduct." (ECF No. 17, PageID.37.) In *Goins*, the Sixth Circuit reasoned that Goins' numerous convictions for driving under the influence "demonstrated a likelihood of future dangerous conduct." *Goins*, 118 F.4th at 797. Regardless of whether Defendant's "pattern of behavior" is sufficiently similar to that of *Goins*, Defendant's felony conviction, his admitted violent conduct in July 2023 during his supervised release, and his supervised release status all indicate that his prosecution does not violate the Second Amendment, and Defendant has not carried his burden to show otherwise.

Defendant's 2020 conviction for receipt or possession of an unregistered firearm, his admitted supervised release violation in 2023, and his supervised release status at the time of this offense, demonstrate that Defendant is sufficiently "dangerous" to be prosecuted pursuant to 18 U.S.C. § 922(g)(1) and that application of § 922(g)(1) to Defendant does not violate the Second Amendment.

### D. Due Process Challenge

Defendant also raises two due process challenges to § 922(g)(1) and *Williams*. (ECF No. 17, PageID.38.) First, Defendant argues that § 922(g)(1) "is overbroad, and facially unconstitutional, as written," and that the Sixth Circuit erred in issuing *Williams* because "[i]t is not the prerogative of unelected judges to rewrite federal statutes." (*Id.*) Second, Defendant avers that the *Williams*' test "is void for vagueness." (*Id.* at PageID.39–43.)

Other courts have rejected these arguments. *See United States v. Johnson*, No. 24-CR-20310, 2024 WL 5078100, at *2 (E.D. Mich. Dec. 11, 2024); *United States v. Brown*, No. 24-20227, 2024 WL 5161946, at *3 (E.D. Mich. Dec. 18, 2024); *United States v. Buford*, No. 2:23-CR-20375-TGB-EAS, 2024 WL 5239444, at *8–9 (E.D. Mich. Dec. 27, 2024); *United States v. Johnson*, No. 2:23-CR-20569, 2025 WL 226957, at *2 (E.D. Mich. Jan. 16, 2025); *United States v. Morris*, No. 2:24-CR-20339-2, 2025 WL 224685, at *3 (E.D. Mich. Jan. 16, 2025); *United States v. Nelson*, No. 23-CR-20566, 2025 WL 581454, at *2 (E.D. Mich. Feb. 21, 2025); *United States v. Newell*, No. 24-CR-20597, 2025 WL 848595, at *3 (E.D. Mich. Mar. 18, 2025).

The Court may not depart from the Sixth Circuit's rulings. Any argument that § 922(g)(1) is "facially unconstitutional" is foreclosed by *Williams*. *See Williams*, 113 F.4th at 657; *Parham*, 119 F.4th at 495. Defendant's arguments that *Williams* is "void for vagueness" must also be rejected because that doctrine applies to statutes, not to rulings pronounced by a court. *Buford*, 2024 WL 5239444, at *9.

Therefore, Defendant's due process challenge to *Williams* and 18 U.S.C. § 922(g)(1) is denied.

## IV. Conclusion

For the reasons set forth above, the Court DENIES Defendant's motion to dismiss Count One of the indictment. (ECF No. 17.)

IT IS SO ORDERED.

Dated: March 27, 2025　　　　s/Judith E. Levy
Ann Arbor, Michigan　　　　　JUDITH E. LEVY
　　　　　　　　　　　　　　United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 27, 2025.

　　　　　　　　　　　　　　s/William Barkholz
　　　　　　　　　　　　　　WILLIAM BARKHOLZ
　　　　　　　　　　　　　　Case Manager